United States District Court
Southern District of Texas
**ENTERED**
August 22, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Filiz Ari Kaya, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-21-2176 |
| | § | |
| Kilolo Kijakazi,[1] | § | |
| Acting Commissioner of the Social | § | |
| Security Administration, | § | |
| *Defendant.* | § | |

# MEMORANDUM AND RECOMMENDATION

Filiz Ari Kaya appeals the Social Security Administration (SSA) Commissioner's final decision denying her application for social security benefits. ECF No. 1. Pending before the court is Plaintiff's Motion for Summary Judgment, ECF No. 14, and Defendant's Motion for Summary Judgment, ECF No. 16. Having considered the motions, administrative record, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

## 1. Procedural Posture

Kaya applied for disability insurance benefits (DIB) and supplemental security income (SSI) on December 10, 2019. Tr. 228–35. Kaya claimed that she became disabled on July 16, 2016, due to chronic pain, anemia, neuropathy, morbid

---

[1] Kilolo Kijakazi is Acting Commissioner of the SSA and is automatically substituted as Defendant under Federal Rule of Civil Procedure 25(d). *See also* 42 U.S.C. § 405(g).

obesity, diabetes, high blood pressure, high cholesterol, and vertigo. Tr. 104–05, 118–19. On reconsideration, Kaya claimed she suffered from vertigo, high blood pressure, bipolar disorder, neuropathy, chronic pain, obesity, social phobia, anemia, diabetes, high cholesterol, and Bell's Palsy. Tr. 150.

Kaya was born on January 20, 1972, and was forty-eight years old on the disability onset date. Tr. 22, 84, 228. Kaya obtained an associate's degree in "allied health." Tr. 84, 568. Prior to the alleged onset date of her disability, Kaya worked as a fast-food manager, restaurant manager, administrative aide, secretary, and assembly line worker. Tr. 85–88, 146–47. Kaya has not worked since June 22, 2018. Tr. 89, 147.

The SSA denied Kaya's applications on March 26, 2020. Tr. 117, 131, 166–67. Kaya sought reconsideration, and the applications were again denied on July 7, 2020. Tr. 170, 171–76. Kaya sought a hearing, and ALJ Gerald Meyer held a hearing by telephone on December 1, 2020. Tr. 81–103, 170. The ALJ heard testimony from Kaya and a vocational expert (VE). Tr. 81–103. Kaya was represented by an attorney. Tr. 83.

The ALJ questioned Kaya and the VE regarding her work history. Kaya testified that she was a restaurant manager, an administrative aide, and an assembly line worker. Tr. 85–89. After exploring Kaya's duties and activities in those jobs,

the VE classified Kaya's past relevant work as administrative clerk, small products assembler, and restaurant manager. Tr. 86–90.

Kaya testified that she was unable to continue working as an assembly worker because the medication she was using "slow[ed] her down" and made her "sleepy and tired." Tr. 90–91. Kaya testified that she was on eight medications when she stopped working. Tr. 94. Kaya testified that the side effects of her medications required her to take more breaks than other employees and made performing her job difficult. Tr. 94. Kaya also testified that she could neither sit nor stand for long periods and needed to elevate her legs at work. Tr. 94. Kaya testified that she was taking eleven medications at the time of the hearing. Tr. 93.

Kaya testified that she had been diagnosed with diabetes and hypertension. Tr. 91. She also testified that she suffered from anemia and Bell's Palsy, the latter of which caused constant watering in her left eye making her vision blurry. Tr. at 91, 93. Kaya testified that she would get dizzy when bending over and could not "use" her feet. *Id.* She also suffered from balance issues caused by diagnosed vertigo and therefore had to lay down for most of the day. Tr. 94–95. Kaya testified that she took prescription medicine for her vertigo but did not know if it would improve. Tr. 95– 96. Kaya further testified that she had chronic pain in her legs and feet and suffered from swelling in her arms, ankles, and fingers, which made them painful, numb, and hard to move. Tr. 92–93.

Kaya testified that she was treated for chronic leg pain by Drs. Kozhaya Sokhon and Nihal Siddiqui. Tr. 92. The ALJ noted that medical records related to her prescribed medications were missing from the record. Tr. 95–96. The ALJ held the record open until December 14, 2020, to ensure the records were included. Tr. 95–97. Kaya testified that a gap in her treatment with Dr. Siddiqui was due to her seeing other specialists including a rheumatologist. Tr. 98. Kaya's attorney clarified that she had not seen Dr. Siddiqui since May 20, 2020. Tr. 99.

The ALJ asked the VE whether an individual could perform Kaya's past work if the person: could lift or carry ten pounds frequently and twenty pounds occasionally; could stand and walk six or sit hours in an eight hour work day with normal breaks; could occasionally use ramps and stairs, stoop, kneel, crouch, and crawl; could not balance; could not climb ladders, ropes, or scaffolds; could not use dangerous machinery or be near unprotected heights; could understand, remember, and carry out detailed but not complex instructions; should do only routine and repetitive work, without frequent changes in duties; and should have no forced pace or assembly line work. Tr. 99–100. The VE said the person could perform Kaya's past work of administrative clerk. Tr. 100. The VE also testified that such an individual could perform work as a file clerk, general clerk, and supply clerk. *Id.*

On cross-examination, the VE testified that an individual with limitations the ALJ specified who could also stand or walk for only two hours during a normal

workday could not maintain any of the jobs indicated. Tr. 101. The VE further stated that adding the need "to elevate their legs about hip-level for two hours per day, during the normal eight-hour workday" would preclude any competitive employment. *Id.* According to the VE there are no jobs in the national economy for a person who would be absent from work more than four days per month on a continuing, consistent basis. *Id.* The VE testified that an individual who would need to take a break every sixty minutes to walk around and leave the job beyond the three normal workday breaks would not be able to perform any jobs in the national economy. Tr. 102. Finally, the VE testified that there are no jobs in the national economy for a person who would need to lie down two hours per day during the workday.

ALJ Meyer issued a decision on January 7, 2021, finding that Kaya was not disabled from July 16, 2018, through the date of the decision. Tr. 20–35. Kaya filed a request for review of the ALJ's decision. Tr. 220–21. On July 7, 2021, the Appeals Council denied review after considering supplemental evidence Kaya submitted after the decision. Tr. 1–13. Kaya timely filed a complaint and an application to proceed in forma pauperis in federal court on June 25, 2021. *See Kaya v. Saul*, H-21-mc-2176, ECF No. 1 (S.D. Tex. June 25, 2021).

## 2. Legal Standards

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program and provides supplemental security income to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. §§ 423, 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2019). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2019).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is

supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill,* 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 3.  The Appeals Council's Ruling on Additional Evidence

When Kaya requested review of the ALJ's decision by the Appeals Council, she submitted as additional evidence Dr. Siddiqui's treatment notes dated November 12, 2020, to December 4, 2020, and Muhammad Imran, M.D.'s treatment notes dated June 3, 2020, to October 15, 2020. Tr. 2. The Appeals Council found, "this evidence does not show a reasonable probability that it would change the outcome of the decision," and therefore denied Kaya's request for review. Tr. 1–4.

Subject to a showing of good cause, the Appeals Council reviews a case when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision[] and there is a reasonable probability that the

additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.940(a)(5), (b), 416.970(a)(5), (b) (2019).

Kaya disagrees with the Appeals Council's decision and argues that the evidence is material because, "had the ALJ been able to review this evidence, the evidence likely would have changed the outcome of this case." *Id.* Because, as will be discussed in connection with the ALJ's step-two findings, the "new" evidence is cumulative of the evidence already before the ALJ and thus would not change the outcome of the decision, there is no error.

### 4. Analysis of the ALJ's Determination

#### A. Step One

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2019). A person engaged in substantial gainful activity is not disabled, regardless of his medical condition, age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b) (2019). The ALJ found that Kaya had not engaged in substantial gainful activity since July 16, 2018, the alleged onset date. Tr. 23. This finding is not in dispute.

#### B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments or any combination thereof is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (2019) (citing

20 C.F.R § 404.1509); 20 C.F.R. § 416.920(a)(4)(ii) (2019) (citing 20 C.F.R. § 416.909). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c) (2019). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond*, 892 F.3d at 817 (emphasis omitted) (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)). If a person does not have a severe impairment, she is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)); *see also* 20 C.F.R. § 416.920(c) (2019).

The ALJ found that Kaya had the following severe impairments: "obesity, disorders of the spine, diabetes mellitus, high blood pressure, depression, and anxiety." Tr. 23. The ALJ found these conditions not to be severe: anemia, high cholesterol, vertigo, and Bell's Palsy. Tr. 23–24. The ALJ did not find fibromyalgia to be severe because there was no definitive diagnosis of it in the record. Tr. 24 (citing Tr. 397–98).

Kaya disputes the step two findings based on the evidence she submitted after the ALJ's decisions, which she asserts reveals a diagnosis of fibromyalgia. ECF No. 14 at 6–8. Contrary to Kaya's assertion, the evidence of fibromyalgia submitted after the ALJ's decision is not different from the evidence already before the ALJ at

the time of his decision. Dr. Muhammad's November 12, 2020 treatment notes submitted after the hearing include the exact same note and statements about fibromyalgia as the September 11, 2020 treatment notes that the ALJ had before him. *Compare* Tr. 51-52 *with* Tr. 684-85. Both include the same diagnostic codes that apparently correspond with fibromyalgia. Tr. 52, 56, 685. Both treatment notes say "[t]he patient is a 48 year old female with . . . fibromyalgia," and that "[l]ikely her bilateral lower extremity and foot pain is due to [d]iabetic neuropathy. Many features of fibromyalgia too."

The ALJ concluded that the records before him did not show a definitive diagnosis of fibromyalgia and that the treatment records did not document the specific objective criteria the administration requires to find that fibromyalgia is a medically determinable impairment. Tr. 24 (citing SSR 12-2p). Because the records submitted after the hearing do not differ from those already before the ALJ, the Appeals Council did not err in finding that consideration of the former would have changed the decision. Moreover, Kaya does not argue that the records before the ALJ were sufficient for him to find that fibromyalgia was a medically determinable impairment. There was no error at step two.

## C. Step Three

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a listed impairment in appendix 1 (Listing). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2019); *see also* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2019). The Listing describes impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a) (2019). If all the criteria of a Listing are met or equaled, the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d) (2019); *Whitehead*, 820 F.3d at 780–81. The claimant has the burden of establishing that the impairment meets or equals the specified medical criteria. *Whitehead*, 820 F.3d 780–81.

The ALJ found that Kaya's impairments or combination of impairments did not meet or medically equal the severity of an impairment defined in the Listing. Tr. 24–25. The ALJ considered Listing sections 1.02, pertaining to major dysfunction of a joint; 12.04, pertaining to depressive, bipolar, and related disorders; and 12.06, pertaining to anxiety and obsessive-compulsive disorders. *Id.*

Kaya challenges the ALJ's step-three findings arguing that the ALJ should have considered section 1.04, pertaining to disorders of the spine. ECF No. 14 at 9–12. Kaya also argues that she can establish her spinal impairment meets or equals the specified medical criteria of Listing section 1.04. *Id.* at 10–12.

11

Citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), Kaya argues that the ALJ failed to "identify which criteria of Listing 1.04A he finds is not met or equaled" and "fail[ed] to even evaluate the Plaintiff's impairments as they pertain to Listing 1.04A." ECF No. 14 at 11–12. In *Audler*, the ALJ "summarily concluded" that the medical evidence indicated the claimant's severe impairments did not meet or medically equal any Listing section. 501 F.3d at 448. The court pointed out that the ALJ did not identify the Listing section that the claimant's impairments failed to meet or provide any explanation as to how the ALJ reached that conclusion. *Id.* The court stated, "Such a bare conclusion is beyond meaningful judicial review." *Id.* The court continued, "[A]s a reviewing court, [it] simply [could] not tell whether [the ALJ's] decision [was] based on substantial evidence or not." *Id.* (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

This case does not present the same problem that *Audler* addressed. Here, the ALJ did not make a mere conclusory statement that Kaya met no Listing section. Instead, he analyzed Listing section 1.02 (major dysfunction of a joint) but not 1.04 (disorders of the spine). Tr. 24. The court's research does not disclose any bright line rule for determining which precise Listing sections the ALJ should consider. And the court is reluctant to invite Plaintiffs' counsel to engage in a post hoc review of the record to find Listing sections that might conceivably have been reviewed by the ALJ. The Social Security Act simply requires that any decision regarding disability

that is in whole or in part unfavorable to a claimant "shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence[] and stating the Commissioner's determination and the reason or reasons upon which it is based." *Audler*, 501 F.3d at 448. (quoting 42 U.S.C. § 405(b)(1)). The statute thus requires the ALJ "to discuss the evidence offered in support of [the] claim for disability and to explain why [he] found [the claimant] not to be disabled at that step." *Id.*

In this case, the record contains unrebutted medical evidence of Kaya's spine problems. The records include notations and diagnoses reflecting spine-related problems. The record reflects multiple notations of cervical disc disorder and degeneration of lumbosacral invertebral disc. Tr. 59, 402, 410, 411, 464, 465. A spine lumbar series imaging on April 10, 2019, revealed "no acute radiographic abnormality" and "minimal L1-L2 degenerative disc disease." Tr. 74, 403, 466, 593. Imaging of the spine on the same date revealed "[n]o acute radiographic abnormality in the cervical spine" and "[m]inimal degenerative disc disease at C4-C5 and C5-C6." Tr. 75, 433, 591. A physical examination on December 4, 2020, included notations of chronic lower back pain, "likely lumbar radiculopathy," and a lumbar spine MRI showing "congenital lumbar spinal stenosis distal to L2-L3[,] [f]acet arthropathy, [and] disc herniation at different levels." Tr. 43, 47.

It appears to the court that Listing section 1.04 was at least relevant and should have been considered. As will be discussed next, however, any error was harmless.

**(1) Error Analysis**

Errors alone do not justify relief from an ALJ's decision. *See Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (quoting *Audler*, 501 F.3d at 448)) ("Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected.") "This Court requires . . . a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision." *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001). "Prejudice can be established by showing that the additional considerations 'might have led to a different decision.'" *Mettlen v. Barnhart*, 88 F. App'x 793 (5th Cir. 2004) (quoting *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)).

Kaya argues that the ALJ's error was prejudicial because she meets the requirements of Listing section 1.04 and, had the ALJ considered the Listing section, he would have found her disabled. ECF No.1 at 10–12.

To meet Listing section 1.04, a claimant must show a disorder of the spine "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with

14

one of three alternative sets of additional criteria. Listing section 1.04. The first set

of additional criteria in Listing section 1.04, which Kaya argues she meets, is:

> A. Evidence of nerve root compression characterized by neuro-
> anatomic distribution of pain, limitation of motion of the spine, motor
> loss (atrophy with associated muscle weakness or muscle weakness)
> accompanied by sensory or reflex loss and, if there is involvement of
> the lower back, positive straight-leg raising [(SLR)] test (sitting and
> supine)[.]

Kaya has the burden of establishing that her impairment or combination of

impairments meets or equals all of the Listing section criteria. *Russo v. Saul,* 805 F.

App'x 269, 273 (5th Cir. 2020). "[A] n impairment that manifests only some of those

criteria, no matter how severely, does not qualify" as a disability. *Heck v. Colvin,*

674 F. App'x 411, 415 (5th Cir. 2017) (citing *Sullivan v. Zebley,* 493 U.S. 521, 530

(1990)).

Kaya argues that the evidence she submitted after the ALJ's decision shows

evidence of a medical condition equivalent to the nerve root compression required

in the Listing section. ECF No. 14 at 10 (citing Tr. 47). The court disagrees. The

record includes a notation of "*[l]ikely* lumbar radiculopathy." Tr. 47 (emphasis

added). The Listing sections require "objective medical evidence from an acceptable

medical source" to establish a musculoskeletal disorder. 20 C.F.R. Part 404, Subpt.

P, App'x 1, § 1.00(C)(1) (2019). Objective medical evidence means medical signs,

laboratory findings or both. *See* 20 C.F.R. § 404.1513(a)(1) (2019); 20 C.F.R.

§ 416.913(a)(1) (2019). Dr. Muhammad's notation does not demonstrate objective medical evidence. The notation shows only a probability without any medical signs, laboratory findings, or actual diagnosis.

Furthermore, the same record shows an accompanying notation of "[c]hronic lower back pain" in connection with review of Kaya's spinal problems. Tr. 47. Listing section 1.04A requires a positive SLR if there is involvement of the lower back. Kaya does not point to any SLR in the medical record and on review the court can find none. The absence of a definitive medically equivalent condition and SLR testing demonstrates that Kaya has failed to meet her burden of establishing that her back problems meet or equal Listing Section 1.04A. Kaya also argues that she has limited range of motion due to her spine problems, which is another requirement of Listing section 1.04A. ECF No. 14 at 11. The record she cites does say "limited range of motion," but with respect to her joints, bones and muscles, not her spine. Tr. 583. The ALJ also noted throughout his decision that Kaya's physical examinations were unremarkable. Tr. 28–29. The court's review of the records confirms the ALJ's finding. *See e.g.,* Tr. 446, 465, 513.

Because Kaya has not satisfied her burden to show that she meets or equals all of the criteria for Listing section 1.04, any error in the ALJ's failure to consider that section was not prejudicial and does not warrant remand.

### D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e) (2019) (citing 20 C.F.R. § 404.1545); 20 C.F.R. § 416.920(e) (2019) (citing 20 C.F.R. § 416.945). The RFC is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 4 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1) (2019). The RFC determination is "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. §§ 404.1520(e); 416.920(e) (2019); *see also* 20 C.F.R. § 416.945(a)(1) (2019); *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 3, 5 (July 2, 1996). Evidence includes objective medical evidence; medical opinion; other medical evidence, such as medical history, diagnosis, and prognosis; information from the claimant or other nonmedical source; and prior administrative medical findings of state agency reviewing consultants. 20 C.F.R. §§ 404.1513(a), 416.913(a) (2019).

The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c) (2019); *see also Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012) (stating that the RFC determination is the "sole responsibility of the ALJ"). The ALJ also bears the responsibility of resolving conflicts in medical opinions. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "The RFC

assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

The ALJ determined that Kaya had the RFC to perform light work except:

> [t]he claimant can lift/carry 20 pounds occasionally and 10 pounds frequently, sit six hours in an eight-hour workday and stand/walk for six hours in an eight-hour workday. She can occasionally climb ramps/stairs and occasionally stoop, kneel, crouch, and crawl. She should have no exposure to dangerous machinery or unprotected heights[,] and she [can] never balance or climb ropes, ladders, or scaffolds. The claimant can understand, remember, and carry out detailed, but not complex instructions. The work should be routine and repetitive work without frequent changes in duties and she should have no forced pace or assembly line work.

Tr. 25–26. In his discussion of the RFC, the ALJ addressed medical and other evidence concerning all impairments that he found severe at step two as well as other conditions that he found not severe. Tr. 23–27.

The ALJ engaged in a thorough discussion of the medical and other evidence. He discussed Kaya's hearing testimony and her other subjective allegations of pain and limitation. Tr. 26. The ALJ recounted Kaya's hearing testimony about the side effects of her medications, blurry vision due to either by Bell's Palsy or diabetes, her chronic pain and her vertigo. Tr. 26–27. The ALJ discussed Kaya's complaints of shooting pain that she experienced "almost everywhere," her statement that she was

unable to stand or walk by herself, and her allegation that she spends around six hours a day laying down and the remainder seated. Tr. 26–27.

The ALJ summarized much of the medical record that was before him. He noted her subjective complaints to her physicians and considered their diagnoses. Tr. 27–30. He noted repeatedly that Kaya's physical examinations were "unremarkable." *Id.* (citing Tr. 445–46, 459, 463–64, 465, 507, 512–13, 516–17, 520–21, 557, 564, 671, 677, 685, 688, 689, 691, 698–702). In his analysis of Kaya's physical impairments, the ALJ explained that he considered Kaya's allegations of chronic pain, limited ability to stand or walk, and needing to lay down for six hours per day. Tr. 30. He contrasted those complaints with his review of the record showing "claimant's physical examinations were generally unremarkable with no consistent signs of weakness atrophy, loss of sensation, limited range of motion, swelling or disturbance of gait." *Id.* While there are notations in some of the records that Kaya had loss of strength, *e.g.* Tr. 139, 583, the majority of the records state that Kaya's strength was normal, *e.g.* Tr. 451, 556, 684. Similarly, while some records note that Kaya suffered some loss of range of motion in her joints, bones, and muscles, *e.g.* Tr. 583, many others say her range of motion was normal, *e.g.* Tr. 342, 371, 613. Thus, the ALJ's reading of the records appears to be correct.

The ALJ also noted that Kaya stated to her physician that she was not taking her medications in the hope that her symptoms would not improve and she would be

awarded benefits. Tr. 30. The ALJ found that this undermined Kaya's credibility in terms of the severity of her symptoms. *Id.* Kaya, in fact, told Dr. Siddiqui that "once she gets approved [for disability] she will start taking care of herself." Tr. 507. The court notes that when Kaya went to a physician to have disability forms filled out, her strength was documented to be 3–4 out of 5, and her range of motion was said to be limited. Tr. 583. During an emergency visit for high blood pressure, on the other hand, her range of motion was documented to be normal and she reported no musculoskeletal symptoms. Tr. 612.

The ALJ also relied on the state agency reviewing consultants who found Kaya capable of light-exertion work with occasional postural activities and that she should avoid even moderate exposure to hazards such as machinery and heights. Tr. 30 (citing Tr. 104–117, 134–148). The ALJ found these determinations persuasive because they were consistent with the objective evidence. Tr. 31.

The court concludes that the ALJ's RFC determination is supported by substantial evidence.

Kaya attacks the ALJ's assessment that she can perform light work on several grounds. ECF No. 14 at 13–16. Kaya first argues that the ALJ failed to adequately incorporate limitations based on her obesity. *Id.* at 13–14. Kaya correctly states that obesity may cause non-exertional limitations in climbing, balancing, stooping, kneeling, crouching, crawling, manipulating of objects, and the ability to tolerate

extreme heat, humidity, or hazards. *Id.* at 13. The ALJ acknowledged Kaya's obesity, Tr. 23, which is documented throughout the record. The ALJ accommodated Kaya's obesity when he placed limitations in the RFC on climbing ramps/stairs, climbing ropes, ladders, or scaffolds, stooping, kneeling, crouching, crawling, and exposure to dangerous machinery. Tr. 26. The ALJ's RFC assessment incorporates limitations related to Kaya's obesity.

Kaya also argues that the ALJ did not account for her fibromyalgia in the RFC. ECF No. 14 at 14. However, as discussed above, fibromyalgia has not been shown to be a medically determinable impairment and thus need not be considered in the RFC. 20 C.F.R. § 1545(a)(2). That legal issue aside, as discussed, the ALJ thoroughly considered all of the medical and other evidence. All of the symptoms Kaya associates with fibromyalgia are reported in the records and the ALJ considered them.

Kaya also argues that the ALJ did not consider her spinal disorders. ECF No. 14 at 14–16. That is not correct. The ALJ discussed Kaya's history of minimal degenerative disc disease in the RFC analysis. Tr. 27–28. The ALJ noted a "spasm in the upper and lower back" within the medical record. Tr. 29. The ALJ also noted "lower back pain alone with tingling and numbness." Tr. 30. The ALJ's consideration of Kaya's spinal problems appears to be, at least in part, the reason he

limited her to light work, limited the duration of her sitting, standing, and walking, and imposed postural limitations. Tr. 25–26.

Kaya also argues the RFC is not supported by substantial evidence because it does not contain adequate accommodations for her chronic pain affecting various parts of her body. ECF No. 14 at 15–16. Kaya bases this argument partially on her continued assertion that she has been diagnosed with fibromyalgia. *Id.* at 14. As discussed, whether her pain is caused by fibromyalgia is not the issue because the ALJ thoroughly considered and discussed Kaya's testimony and her documented history of pain in his decision. Tr. 27–30. The records are replete with Kaya's complaints of pain. The ALJ, specifically noted that he "had considered the claimant's allegations of chronic pain" and he "considered the claimant's reports of chronic pain" when formulating the RFC. Tr. 30. The RFC limits her to light work with many limitations. It is not clear what other limitations Kaya believes need to be included to account for her pain. The ALJ has "discretion to determine the disabling nature of a claimant's pain," and his "determination is entitled to considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

Kaya further argues that the ALJ erred in finding that she has only mild mental limitations in interacting with others. ECF No. 14 at 16. Kaya bases her argument on a psychological examination performed by Dr. Copp that found she had a moderate limitation in interacting with others. *Id.* Dr. Copp found Kaya was

"moderately impaired" in her "ability to maintain effective social interaction with others." Tr. 569. The ALJ summarized and fully considered Dr. Copp's examination in formulating the RFC. Tr. 32 (citing Tr. 566–70). The ALJ found Dr. Copp's assessment to be "overly vague" and "not fully consistent" with the record. *Id.* "Due to this inconsistency and vagueness" the ALJ found the opinion unpersuasive. *Id.* The ALJ also considered the psychological opinions of two state agency psychological consultants that he found consistent with the record and persuasive. The ALJ bears the responsibility of resolving conflicts in medical opinions. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). There is no error in the ALJ's finding that Kaya had a mild mental limitation in interacting with others.

All of these arguments about whether the ALJ properly considered Kaya's various ailments and complaints are really just disagreement with how the ALJ considered the evidence. Other than citing evidence that conflicts with the ALJ's ultimate conclusions, Kaya does not point to any reversible error in the ALJ's analysis. As discussed above there is ample evidence to support the ALJ's RFC determination. There is no reversible error. *See Vaught v. Astrue*, 271 F. App'x 452, 456 (5th Cir. 2008) (explaining that if an RFC is supported by substantial evidence, mere disagreement with the determination does not constitute reversible error).

Finally, Kaya argues that the failed to properly weigh the medical opinions in the record. The regulations require, at a minimum, that the ALJ consider the consistency and supportability of the medical opinions in the record and articulate how persuasive he finds the opinions. As to supportability and consistency, the ALJ must consider a medical opinion's persuasiveness based on how much the objective medical evidence and the medical source's explanations support the medical opinion and how consistent the medical opinion is with the evidence from other medical sources. 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2) (2019).

The ALJ considered Dr. Siddiqui's April 10, 2019 statement. Tr. 714–15. Dr. Siddiqui stated that Kaya suffered from chronic pain, anemia, morbid obesity, diabetic neuropathy, as well as other conditions and opined that Kaya could not do any amount of any activity. Tr. 714. The ALJ discussed Dr. Siddiqui's opinion but found that it was "inconsistent with Dr. Siddiqui's own treatment notes. . . and the record as a whole." Tr. 30 (internal citation omitted). The ALJ concluded that Dr. Siddiqui's statement was unpersuasive. *Id.* The ALJ also considered Dr. Siddiqui's May 2020 assessment. Tr. 31. Dr. Siddiqui opined that Kaya was incapable of even low stress jobs due to pain and other symptoms that severely interfered with her attention and concentration to perform even simple work tasks. *Id.* Dr. Siddiqui also opined that Kaya had various limitations related to sitting, standing, walking, lifting, and other postural limitations. *Id.* The ALJ noted that, while Siddiqui's opinion was

broadly consistent with his objective findings, it "tracks most closely with" Kaya's self-reported limitations. *Id.* The ALJ found that Siddiqui's assessment was reflective of only a single encounter and was not consistent with his prior treatment notes or the rest of the record. *Id.* The ALJ concluded that Dr. Siddiqui's opinion was not persuasive. *Id.*

Dr. Sokhon completed a physical RFC questionnaire on May 5, 2020. Tr. 658–62. Dr. Sokhon listed Kaya's diagnosed conditions as diabetes, hypertension, anemia, hyperlipidemia, Bell's Palsy, and anxiety and opined that Kaya could work low stress jobs with some limitations. Tr. 658–59. Dr. Sokhon opined that Kaya should be limited to sitting no more than two hours at a time; standing no more than thirty minutes at a time; standing/walking less than two hours in an eight-hour workday; needing fifteen-minute breaks every hour to walk; needing unscheduled breaks every two hours for twenty minutes; needing to elevate her legs regularly, rarely lift 10 or 20 lbs; and being absent more than four days per month. Tr. 659–61. The ALJ discussed Dr. Sokhon's opinion but found that it was "inconsistent with Dr. Sokhon's own treatment notes . . . and the record as a whole." Tr. 31 (internal citation omitted). The ALJ concluded that Dr. Sokhon's statement was unpersuasive. *Id.*

The ALJ properly evaluated Drs. Siddiqui and Sokhon's medical opinions under 20 C.F.R. §§ 404.1520c(c) and 416.920c(c). He found Drs. Siddiqui and

25

Sokhon's opinion to be inconsistent with the objective medical evidence, including the doctors' own treatment notes, and was not supported by the objective medical record. Tr. 30–31. The ALJ thus satisfied the regulatory requirements. *See* 20 C.F.R. §§ 404.1520c, 416.920c (2019). Again, Kaya just disagrees with the ALJ's evaluation of the medical opinions, but that is not a reason to remand.

The RFC is supported by substantial evidence and is not the result of legal error.

### E. Step Four

At step four, the ALJ determines whether the claimant can perform jobs she previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2019); *see also Perez*, 415 F.3d at 462. If the claimant can perform her past work, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2019). If the claimant cannot perform her past work, the ALJ proceeds to step five. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1) (2019).

The ALJ found that Kaya was able to perform her past relevant work as an administrative clerk. Tr. 33. This specific finding is undisputed. The ALJ proceeded to step five to provide alternative findings. *Id.*

### F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education,

and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)); *see also* 20 C.F.R. § 416.920(a)(4)(v) (2019). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)); *see also* 20 C.F.R. § 416.920(g)(1) (2019).

The ALJ found that Kaya could perform jobs that exist in significant numbers in the national economy. Tr. 34. The ALJ appropriately relied on the VE's testimony that an individual of Kaya's age, education, work experience, and RFC would be able to work as a file clerk, general clerk, and supply clerk. *Id.*

Because the VE's testimony was based on a hypothetical question that incorporated all the limitations reasonably recognized by the ALJ and Kaya's attorney cross-examined the VE, the VE's testimony is substantial evidence supporting the ALJ's step-five determination. *See Masterson*, 309 F.3d at 273–74 (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross-examination).

## 5. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the

court recommends that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the final decision of the Commissioner be affirmed.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. See *Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on August 22, 2022.

_____
Peter Bray
United States Magistrate Judge